AFFIDAVIT

I, Andrew Floriani, being duly sworn, state as follows:

1.      I am a Border Patrol Agent with the United States Department of Homeland Security, United States Border Patrol.  I have been with the Border Patrol for more than 20 years. I am currently assigned to the Newport Border Patrol Station in Derby, Vermont.

2.      This affidavit is offered to demonstrate that probable cause exists to believe that, on March 19, 2026, in the District of Vermont, Isabela Evangelista-Fernandez (EVANGELISTA-FERNANDEZ), Fernando Ferreira-Coelho (FERREIRA-COELHO), and Warllen Fonseca-Goncalves (FONSECA-GONCALVES), aliens from Brazil, entered or attempted to enter the United States at any time or place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1); John Franz Giraldo-Pineda (GIRALDO-PINEDA), knowing that a person is an alien, brought or attempted to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry, in violation of 8 U.S.C. § 1324(a)(1)(A)(i); and Francisco Saul Castillo-Merchan (CASTILLO-MERCHAN), knowing or in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transported or moved, or attempted to transport or move, such alien within the United States in furtherance of the alien's illegal entry, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

3.      The information contained in this affidavit is based on my training and experience, as well as my own investigation and information I received from other agents.  This affidavit is intended to show that there is probable cause to believe that EVANGELISTA-FERNANDEZ, FONSECA-GONCALVES, FERREIRA-COELHO, GIRALDO-PINEDA, and

1

CASTILLO-MERCHAN committed the foregoing offense and does not set forth all facts I know from my investigation into this matter. Any statements included herein are provided only in sum and substance and in part.

4.      On March 19, 2026, at approximately 6:40 a.m., Swanton Sector Radio Communications (dispatch) notified Newport Border Patrol Agents of two individuals with backpacks walking south in an open field west of Douglas Road in North Troy, VT. Agents immediately responded. While enroute to the location, Agents were notified via radio by Newport Supervisory Border Patrol Agent Cameron Thompson of a third subject without a backpack who was also walking south in the same area. Border Patrol Agent (BPA) Boyd Spencer was first to arrive in the vicinity and began to search on foot in the woods near Bear Mountain Road in North Troy, VT. After a few minutes in the woods, BPA Boyd spotted four individuals attempting to hide near trees and brush. BPA Boyd identified himself as a BPA and instructed all individuals to walk toward him. All four individuals complied and walked toward BPA Boyd, where he conducted an immigration inspection. Three of the individuals, later identified as EVANGELISTA-FERNANDEZ, FONSECA-GONCALVES, and FERREIRA-COELHO, admitted to being citizens and nationals of Brazil. One individual, later identified as GIRALDO-PINEDA, admitted to being a citizen and national from Colombia. All four subjects did not produce any immigration documents that would allow them to legally stay or remain in the U.S. During a pat-down search of GIRALDO-PINEDA in the field, a cell phone was found in his pocket along with an envelope containing $1500 Canadian dollars.

5.      After the subjects were detained and transported to the Newport Border Patrol Station, BPA William Haffly and BPA Jarrett Nelson spotted a suspected pickup vehicle: a black

sport utility vehicle (SUV) with New Jersey registration, driving west on Route 105 towards North Troy, VT. Both Agents turned their marked Border Patrol vehicle, equipped with lights and sirens, around to follow the vehicle in question. Both Agents are from the Richford Border Patrol Station and were assisting Newport Agents with the event that occurred earlier. BPA Nelson was the driver while BPA Haffly was the passenger in the front seat. While following the black SUV, BPA Haffly noted a change in body language of both the driver and passenger, supporting his suspicion that the vehicle was related to the four individuals who had just been apprehended. BPA Haffly also observed that the vehicle was driving 20 miles per hour (MPH) below the posted speed limit of 50 MPH. BPA Haffly was able to read the New Jersey plate, F10NWR, and requested a vehicle check through dispatch via radio. Dispatch responded that the vehicle was a 2016 black Ford Explorer registered to Francisco Castillo-Merchan from Newark, NJ. As they continued to follow the SUV for a couple of miles and as it neared Cemetery Road in North Troy, VT, the black SUV signaled right and turned north, heading toward where the four individuals were just apprehended. Cemetery Road is approximately a half-mile away from the incident and is frequently used as a load-up location for illegal aliens crossing from Canada into the United States to be picked up. As the SUV turned into Cemetery Road, the driver, later identified as CASTILLO-MERCHAN, a citizen of Spain, turned his head, saw the marked Border Patrol vehicle behind him, made a U-turn, and drove back onto Route 105 heading west again. At this time, BPA Haffly instructed BPA Nelson to activate his lights and sirens to perform a vehicle stop. The SUV yielded just west of the Dollar General in North Troy, VT.

6.      BPA Haffly approached the passenger's side of the SUV and observed a female passenger, later identified as a citizen of Ecuador, and the male driver, who is the registered

3

owner of the vehicle, CASTILLO-MERCHAN. BPA Haffly identified himself as a BPA in English and immediately noticed a cellular telephone in the female passenger's left hand with a map application open, showing a destination that was 0.1 miles away. The exact destination was unclear. Both subjects did not speak English and replied to BPA Haffly that they did not speak English. Both subjects responded when BPA Haffly spoke in Spanish, where he again identified himself as a BPA and questioned both subjects about their citizenship. BPA Haffly conducted an immigration inspection, and both subjects provided Employment Authorization cards, which do not allow individuals entry into the United States. Both subjects were asked for any immigration documentation that would allow them to legally remain or stay in the United States, and neither provided any documents. BPA Haffly questioned both as to why they were in the area, and they stated they were on vacation. BPA Haffly also observed that there was no luggage in the back seats.

7.      BPA Haffly radioed dispatch and requested a records check for immigration and criminal history. Record checks revealed that CASTILLO-MERCHAN was a visa waiver overstay, and that the female passenger had illegally entered in 2024, was issued a Notice to Appear (NTA), and was released on her own recognizance. Both subjects' phones, money, and personal effects were secured. Both subjects and their belongings were transported to the Newport Border Patrol Station for further processing.

8.      Douglas Road and its vicinity do not constitute a time or place designated by immigration officers to enter the United States. The nearest designated place of such entry that was open at that time is the Interstate 91 (I-91) Port of Entry (POE), located approximately 14 and a half miles away to the east of where all four individuals on foot were seen and

4

encountered. Douglas Road is a short, traveled road, which is near the United States-Canada Border and where the majority of the northern part of the road is overgrown with heavy vegetation. There is an open field just west of Douglas Road where the individuals were seen walking. This area is frequently used for human and drug smuggling between the United States and Canada.

9. All subjects were detained and transported to the Newport, Vermont Border Patrol Station for further processing. At the Newport Border Patrol Station, all six subjects' fingerprints were scanned electronically and submitted to the Integrated Automated Fingerprint Identification System (IAFIS) and Automated Biometric Identification System (IDENT) databases. These are biometric databases that contain criminal and immigration records. Results from these submissions confirmed immigration history on some of the individuals and no criminal history on any of the subjects.

10. FONSECA-GONCALVES has immigration history dating back to March 17, 2005, and April 19, 2013, when he entered as a non-immigrant visa holder. EVANGELISTA-FERNANDEZ has immigration history dating back to May 23, 2023, and October 10, 2023, as a non-immigrant visa holder. On February 26, 2025, EVANGELISTA-FERNANDEZ attempted to enter the United States from Canada through the Rainbow Bridge New York Point of Entry but was denied entry in part due to an allegation that had been made against her concerning her potential involvement in human trafficking. She was then allowed to withdraw in lieu of an Expedited Removal and was returned to Canada.

11. At the Newport Border Patrol Station, interviews were conducted by Border Patrol Intel Agents Thomas Russell, Mark Danna, Brian Wilda, and James Loomis, along with

5

Homeland Security Investigator (HSI) Trevor Walker. GIRALDO-PINEDA had his *Miranda* Rights read to him, and he was willing to speak with Agents without a lawyer present. During his interview, he stated that he was asked to do a favor by a friend who lives in Mexico. He stated that he was asked to bring three people from Canada to the United States by walking them across. He also admitted that the $1500 Canadian dollars in an envelope was to be given to the driver of the vehicle that was to pick up the three subjects. He stated that he was going to return to Canada after delivering the people to the vehicle. GIRALDO-PINEDA gave consent to search his phone, which contained communication involving the pickup location and an image of the vehicle that would pick up the aliens. The vehicle image matches the vehicle that was stopped by BPA Agents near the Dollar General in North Troy, VT and that CASTILLO-MERCHAN drove.

12.    CASTILLO-MERCHAN was also read his *Miranda* Rights. He initially waived his rights and spoke to Agents for a short time before invoking his rights. Before he invoked his *Miranda* rights, CASTILLO-MERCHAN stated that he entered the U.S. on a visa waiver from Spain and had overstayed by several years. He claimed that he married a U.S. citizen and that he received a work authorization card. He claimed that he and his girlfriend, the female passenger, were in the area because he had the week off and they were looking for a hotel and became lost. He claimed he knew nothing of the human smuggling or that he was near the border. He was shown an image of a black Ford Explorer from the foot guide's phone (GIRALDO-PINEDA) and agreed that it was his car in the image. When he was advised that the image was from the foot guide's phone, CASTILLO-MERCHAN requested a lawyer, and the interview ended. After an hour or so, CASTILLO-MERCHAN requested to speak with the Agents. They re-engaged and reminded him of his *Miranda* Rights. This time, he admitted to being in contact with a

6

"Fabrico" from Canada who was to pay him $1,100.00 U.S. dollars (which equals approximately $1500 Canadian dollars) to pick up two people and bring them to New Jersey. He stated that he was unaware of the border being close by but admitted to deleting messages between him and Fabrico because he was nervous. CASTILLO-MERCHAN consented to a search of his phone as well.

13.    Based on the foregoing, I believe there is probable cause to believe that on March 19, 2026, in the District of Vermont, EVANGELISTA-FERNANDEZ, FERREIRA-COELHO, and FONSECA-GONCALVES, aliens from Brazil, entered or attempted to enter the United States at any time or place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1); GIRALDO-PINEDA, knowing that a person is an alien, brought or attempted to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry, in violation of 8 U.S.C. § 1324(a)(1)(A)(i); and CASTILLO-MERCHAN, knowing or in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transported or moved, or attempted to transport or move, such alien within the United States in furtherance of the alien's illegal entry, in violation of 8 U.S.C. §  1324(a)(1)(A)(ii).

7

Dated at South Burlington, in the District of Vermont on this 20th day of March, 2026.


_____
ANDREW FLORIANI
BORDER PATROL AGENT
DEPARTMENT OF HOMELAND SECURITY


Attested and sworn to me via reliable electronic means under Federal Rule of Criminal Procedure 4.1(b)(2)(A), specifically, a video call, in Burlington, Vermont, on this 20th day of March 2026.


_____
HONORABLE KEVIN J. DOYLE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF VERMONT